UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GARY MONTGOMERY, | ) | |
| *Plaintiff*, | ) | Case No. 3:25-cv-539 |
| v. | ) | Judge Atchley |
| FREDDIE SIEVERS, SERGEANT FRY, SHAWN PHILLIPS, FRANK STRADA, and STACEY OAKS, | ) | Magistrate Judge Poplin |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gary Montgomery, a prisoner in the custody of the Tennessee Department of Correction ("TDOC") currently incarcerated at the Morgan County Correctional Complex ("MCCX"), filed a civil rights complaint under Tennessee law, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 [Doc. 2] and a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court will (i) **GRANT** Plaintiff's motion to proceed *in forma pauperis*, (ii) **DISMISS** Plaintiff's federal claims without prejudice for failure to state a claim upon which relief may be granted, and (iii) **DECLINE** to exercise supplemental jurisdiction over Plaintiff's State-law claims, meaning those claims will also be dismissed without prejudice.

I.  **MOTION TO PROCEED *IN FORMA PAUPERIS***

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of Plaintiff's motion [Doc. 1] demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 1] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with payment of the filing fee.

II.  **SCREENING OF COMPLAINT**

    A.  **Screening Standard**

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630

F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

B. **Plaintiff's Allegations**

At approximately 6:15 p.m. on October 3, 2025, Plaintiff, an "elderly and vulnerable" inmate, waited in line at the "triangle chow hall" to receive his diabetic food tray. [Doc. 2 at 1–3]. Regular trays are served before "special trays[,]" so special trays are typically served late. [*Id.* at 2]. "Plaintiff was provided approximately five (5) minutes to eat (which is a violation of the TDOC policies) and was rushed out of the chow hall." [*Id.* at 3]. Because Plaintiff was unable to eat anything, he "put all his food in the diabetic night sack to take back[.]" [*Id.*].

As Plaintiff was leaving the dining area, Defendant Captain[1] Sievers told Plaintiff he had too much food and took Plaintiff's food. [*Id.*]. Plaintiff explained that he had not received sufficient time to eat the food, and that "it was his total diabetic supply." [*Id.*]. Sergeant Fry, Captain Sievers's "right hand sergeant," stated, "[D]on't question my boss or I'll lock you up." [*Id.*]. Captain Sievers told Plaintiff he did not care Plaintiff was a diabetic who had not eaten, and "[b]oth

---

[1] In the factual background portion of his complaint, Plaintiff refers to this Defendant as "Lt. Sievers." [Doc. 2 at 3]. But Plaintiff identifies him as "Captain" in the "Parties" section. [*Id.* at 2]. The Court assumes, for screening purposes, that "Captain" is the appropriate rank for Defendant Sievers.

3

Sievers and Fry grabbed [P]laintiff's food [and threw] it in the trash." [*Id.*]. Plaintiff did not eat that evening, and he wrote a grievance about the event. [*Id.*].

The following day, "the same events played out" again. [*Id.*]. Captain Sievers confiscated Plaintiff's food and threw it in the trash [*Id.*]. Plaintiff wrote a grievance about Captain Sievers's conduct, and "the board sa[id] rules were followed by not letting food out of the chow hall." [*Id.*]. But inmates "steal[] food by the wheelbarrows full[] with little objection from the staff." [*Id.*]. Plaintiff maintains that this conduct violates the Eighth Amendment and the Due Process Clause, because "there is never an opportunity for a hearing." [*Id.*].

Aggrieved, Plaintiff filed the instant action against Freddie Sievers, an Officer in Charge ("OIC") at the MCCX; Sergeant Fry, the OIC's aide; Shawn Phillips, the Warden of MCCX; Frank Strada, TDOC Commissioner; and Stacey Oaks, "the Chief overseer of security and safety at MCCX." [*Id.* at 2]. Plaintiff asks the Court to award him a variety of injunctive, declaratory, and monetary relief. [*Id*. at 3–4].

### C. Analysis

#### 1. Section 1983 Claims

##### a. TDOC Policies

Plaintiff maintains that Defendants violated TDOC policy by only providing him with five minutes to eat. [Doc. 2 at 2–3]. But TDOC policies do not create a protectable liberty interest, and therefore, failing to follow those policies does not raise an issue of constitutional significance. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Accordingly, this allegation fails to state a claim upon which relief may be granted, and it will be dismissed.

### b. Deliberate Indifference

Plaintiff maintains that Defendants' conduct constituted "deliberate indifference to a serious medical need[,]" because he is a diabetic. [*Id.* at 3]. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Whether the issue is an inmate's medical needs or the conditions under which he is confined, "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id*. (quoting *Farmer*, 511 U.S. at 828).

A deliberate indifference inquiry requires consideration of two separate elements. *Id*. at 839–40 (citations omitted). First, the objective element requires an inmate to show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 840 (quoting *Farmer*, 511 U.S. at 834). Second, the subjective element requires that "an official must 'know of and disregard an excessive risk to inmate health or safety.'" *Id*. (alterations omitted) (quoting *Farmer*, 511 U.S. at 837). Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839–40). Therefore, to establish an official's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. And to set forth a viable constitutional claim, Plaintiff must plausibly allege that his health suffered as a result of the alleged deprivation. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 401 (6th Cir. 1999).

Although unclear, it appears from Plaintiff's allegations that he is generally permitted an evening meal and a separate "night sack" to take with him back to his cell. [*Id.* at 3]. On two

5

occasions, however, Plaintiff combined his evening meal with his "night sack[,]" and Defendants Sievers and Fry confiscated it. [*Id.* at 2–3]. Plaintiff does not state, and the Court cannot infer from the facts presented, why Plaintiff did not eat at least some of his evening meal in the five minutes he was permitted to eat. But whether Plaintiff had an opportunity to eat is ultimately immaterial here, because Plaintiff has not alleged any facts suggesting that his health was negatively impacted by the denial of one meal on two separate evenings. Therefore, Plaintiff has failed to state a colorable Eighth Amendment claim. *See Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977) (providing that where a prisoner's diet is sufficient to sustain the prisoner's good health, no constitutional right has been violated); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (affirming dismissal of claim based on inadequate nutrition where the plaintiff failed to allege his health suffered as a result of the alleged deprivation of meals). Accordingly, Plaintiff's claims of deliberate indifference will be dismissed.

### c. Due Process

Plaintiff claims that he was not permitted a hearing before his food was confiscated, which violates due process. [Doc. 2 at 3]. But to state a due process violation, Plaintiff must demonstrate that he was deprived of an interest protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake."). When a particular prison discipline does not "impose[] atypical [or] significant hardship on the inmate in relation to the ordinary incidents of prison life," he is not entitled to the full panoply of due process rights. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Isolated incidents where Plaintiff was forced to go without eating a meal, either because of time constraints or restrictions on food outside of certain areas, do not pose an "atypical or

6

significant hardship" in the context of prison life under the facts presented. *See, e.g.*, *Porter v. Wolczyk*, No. 9:04-CV-708, 2007 WL 397046, at *3 (N.D. N.Y. Jan. 30, 2007) ("As applied to a due process claim involving a prisoner's diet, in order to allege an atypical and significant hardship, . . . a plaintiff must allege that the restricted diet is nutritionally inadequate or otherwise poses a threat to his physical well being." (citing cases)). Accordingly, Plaintiff was not entitled to due process protections prior to be subjected to these restrictions. *See Olim v. Wakinekoma*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement"). Plaintiff's due process claims will be dismissed.

### d. Official Capacity Claims

The Court otherwise notes that Plaintiff has sued Defendants in both their individual and official capacities as employees of the TDOC. [Doc. 2 at 2]. But the TDOC is an arm of the State of Tennessee, and thus, suit against Defendants in their respective official capacities is suit against the State itself. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State"); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). And Plaintiff may not maintain suit against a State or its employees in their official capacities because "a state is not a person within the meaning of §1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Thus, all official-capacity claims against Defendants must be dismissed.

### e. Individual Liability Claims

Even if Plaintiff's § 1983 allegations were sufficient to sustain a personal claim against Defendants Sievers and/or Fry (which the Court expressly finds they are not), Plaintiff maintains

7

that Defendants Phillips, Strada, and Oaks bear individual liability because of the duty of care they owe inmates due to their particular positions of authority. [*See* Doc. 2 at 2]. But a plaintiff cannot maintain suit against an individual defendant based solely on his or her position of authority, as there is no *respondeat superior* liability in a § 1983 action. *See, e.g.*, *Monell*, 436 U.S. at 691 (holding local government "cannot be held liable under §1983 on a *respondeat superior* theory"). Instead, to state a claim against any Defendant individually, Plaintiff must adequately plead that each Defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). Plaintiff fails to plead any facts suggesting that Defendants Phillips, Strada, and/or Oaks were personally involved in the events giving rise to this action.

And, to the extent Plaintiff purports to sue Defendants Phillips, Strada, and/or Oaks under a theory of supervisory liability, he must show "that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (internal citation omitted). Plaintiff's complaint fails to state a colorable supervisory liability claim, as it fails to allege that any of these individual Defendants violated any of Plaintiff's constitutional rights, or that he or she "directly participated" in or "encouraged" violations by the jail staff. *Id.*; *see also Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (explaining that "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'" (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999))). Accordingly, Plaintiff has not pled sufficient facts to suggest that Defendants Phillips, Strada, or Oaks had any personal involvement in the

8

incidents giving rise to Plaintiff's complaint, and all individual-capacity claims against these Defendants will likewise be dismissed.

### 2. 42 U.S.C. § 1985

Plaintiff maintains he is entitled to relief in this action under 42 U.S.C. § 1985 [Doc. 2 at 1], which allows the recovery of damages against "two or more persons" who "conspire" to prevent an officer from discharging his duties, deter or intimidate a witness, or deprive another person of civil rights or privileges. 42 U.S.C. § 1985. However, Plaintiff has not alleged any facts that would support a conspiracy claim. Accordingly, any intended claims under § 1985 will be dismissed.

### 3. State-Law Claims

Plaintiff alleges State-law claims for the "tort of the deprivation of food[,]" negligence, and negligence per se. [Doc. 2 at 3–4]. Because the Court is dismissing Plaintiff's federal claims, the Court will exercise its discretion and decline to exercise supplemental jurisdiction over the remaining State-law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–727 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5. Plaintiff's federal claims are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim;

6. The Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's State-law claims, and those claims are **DISMISSED WITHOUT PREJUDICE**; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**